IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CHARLES WILKERSON,               )

         Petitioner:            )

      -vs-                       )   Crim. No. 9207CR06338
                              Civil No. 04-11771-RGS

UNITED STATES OF AMERICA,        )

         Respondent:            )

_____/

## MOTION REQUESTING LEAVE TO FILE PETITION TO AMEND PURSUANT TO RULE 15(a), F.R.CIV.P., DUE TO EXCEPTIONAL CIRCUMSTANCES -- TO PREVENT A SERIOUS MISCARRIAGE OF JUSTICE

TO THE HONORABLE JUDGE OF SAID COURT;

MAY IT PLEASE THIS COURT:

    COMES NOW, Charles Wilkerson, Petitioner, pro-se, (and being referred to herein as, Mr. Wilkerson and/or Petitioner), in the aforementioned caption, respectfully requesting that this Honorable Court thoroughly entertains the full merits (with facts, arguments and/or exhibits, etc.) of Mr. Wilkerson's claims and grant the same as a whole and/or in part. In support thereof, Mr. Wilkerson, pro-se, to wit, states as follows:

    Petitioner seeks liberal constraints and/or humbly requests that this Honorable Court utilizes its reasonable good-will discretion by reviewing the present Amendment (that was properly prepared with due diligence and under good faith not to prejudice the Government in no way, shape, form and/or fashion etc.), under the standards set forth by the Supreme Court in **Haines v. Kerner**, 92 S.Ct. 594, 404 U.S. 519, 30 L.Ed.2d 652 **(1972)** (per curiam) (Especially when one is in prison, allegations of pro-se, complaint are held to less stringent standards

1  than formal pleadings drafted by lawyers).

2   Moreover, authority to support the instant Amendment can be found

3  in, **Schever v. Rhodes**, 416 U.S. 232, 40 L.Ed.2d 90 (1974), where the

4  Supreme Court found:

5    "**Factual allegations must be presumed to be true, and Court must draw all reasonable inferences in**

6    **favor of Petitioner/Plaintifff.  The issue is not whether Petitioner/Plaintiff will ultimately pre-**

7    **vail, but whether he's entitled to offer evidence in support of his claims."**

8   Id.

9   Additionally, Petitioner cites another authority from the Supreme

10  Court to further support the instant Motion to Amend, which can be

11  found in **Hughes v. Rowe**, 409 U.S. 9, 66 L.Ed.2d 163 (1980) ("A pro-se,

12  litigant's pleadings are to be construed liberally, and he/she must be

13  allowed to develop a potentially meritorious claim"), and in **Fine v.**

14  **City of New York**, 529 F.2d 70 (2nd Cir. 1975), the Court held that,

15  "When a Federal Court is evaluating a pro-se, complaint petition, the

16  Plaintiff's or Petitioner's allegations are deemed to be true."

17   Petitioner, pro-se, hereby further submits the instant motion re-

18  questing leave to amend in light of Rule 15(a), F.R.Civ.P., which ex-

19  plicitly states in part that:

20    "(a)  AMENDMENTS.  A party may amend the party's pleading once as a matter of course at any time

21    before a responsive pleading is served or, if the pleading is one to which no responsive pleading

22    is permitted and the action has not been placed upon the trial calendar, the party may so amend

23    it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading

24    only by leave of court or by written consent of the adverse party;  and leave shall be freely

25    given when justice so requires" [As here, with Mr. Wilkerson who is actually "factually" innocent].

26

27  Id. at Rule 15(a), F.R.Civ.P.

28   Mr. Wilkerson submits that, "the purpose of [Fed.R.Civ.P.] 15 is

1  to provide maximum opportunity for each claim to be decided on its

2  merits rather than on procedural technicalities.  This is demonstrated

3  by the emphasis Rule 15 places on the permissive approach that the

4  District Courts are to take to Amendment requests, no matter what their

5  character may be." **United States v. Thomas**, 221 F.3d 430, 435 (3rd Cir.

6  2000) (quoting 6 Charles Allen Wright & Arthur R. Miller, Federal Prac-

7  tice & Procedure § 1471 (2d. Ed. 1990) (2000 Supp.)).  Pursuant to Fed.

8  R.Civ. P. 15(a), a party may amend the party's pleading once as a matter

9  of course before a responsive pleading is served [As here, the District

10  Court has not issued a "Show Cause Order" to the Government, mistakenly

11  believing that Petitioner has "<u>NOT</u>" paid the Court's filing fee of

12  $5.00 for the process to begin].  See, (Exhibit - A).

13      Furthermore, Rule 15(a), F.R.Civ.P., does however, permit an amend-

14  ment even after a responsive pleading is served [which is inapplicable

15  to Petitioner's present position as stated at **supra**], with leave of

16  Court, which "shall be freely given when justice so requires."  Leave

17  to amend should be freely granted, unless there is evidence of undue

18  delay, bad faith, or dilatory motive on part of the movant, repeated

19  failure to cure deficiencies by amendments previously allowed, or undue

20  prejudice to the opposing party by virtue of allowing the amendment.

21  See, **Foman v. Davis**, 371 U.S. 178, 182 (1962).

22      In this instance, Petitioner has diligently prepared the present

23  motion to amend, to cure some deficiencies found inside Mr. Wilkerson's

24  28 U.S.C. § 2254 Motion form, erroneously alleging that Petitioner was

25  afforded two (2) Evidentiary Hearings in the State Court proceedings

26  which are far from the truth;  which said errors were committed by the

27  Jailhouse Lawyer at FCI-Raybrook that prepared said motion in question

28  for Mr. Wilkerson.  Thus, this Honorable Court has the discretion to

-3-

1  allow the leave to file an amendment pleading anytime during the pro-
2  ceedings to afford the Government sufficient facts to file an adequate
3  response.  But, failure to grant the instant amendment being submitted
4  in good faith and with due diligence will expose Mr. Wilkerson to suffer
5  a severe miscarriage of justice.  **Easterwood v. Champion**, 213 F.3d 1321
6  **(10th Cir. 2000)** ("Noting that evaluation of due diligence may not
7  'ignore [] the reality of the prison system.'").  See also, **Wims v.**
8  **United States**, 225 F.3d 186 (2nd Cir. 2000).

9      Mr. Wilkerson respectfully refers this Honorable Court to apply
10  the legal principle of **Boykin v. Alabama**, 395 U.S. 238, 242-243 (1969),
11  in the case at bar, where the Supreme Court held that the constitutional
12  requirement of a guilty plea must be vacated or nullified unless the
13  record of the plea proceedings demonstrates that it was knowing and
14  voluntary."  Thus, as the Fifth Circuit noted in **Clayton v. Blackburn**,
15  578 F.2d 117, 120 **(5th Cir. 1978)** (per curiam), the mandate of **Boykin**
16  is best satisfied when a verbatim transcript of the guilty plea plead-
17  ing is available on review.

18      In **Domenica v. United States**, 292 F.2d 483 **(1st Cir. 1961)**, the
19  First Circuit decided that a Rule 11 compliance commanded that 1) the
20  plea be voluntarily made, 2) with an understanding of the nature of the
21  charge, and 3) that the court address the defendant [As in this in-
22  stance, Mr. Wilkerson, pro-se] personally.  The record should reflect
23  that, as in Petitioner's case in question, the Honorable Dolan has a
24  regular custom "NOT" to issue a "PLEA COLLOQUY" to all defendants that
25  go before him i.e., to plead guilty, which is a clear violation under
26  Rule 11, F.R.Crim.P., the Constitution and Massachusetts law;  which
27  was done against Petitioner and rising to the -- violations being pre-
28  sented herein.... .

In the case at bar, Mr. Wilkerson asserts that, in **Boykin v. Alabama, at supra,** the Supreme Court further held that it was constitutional error for a state trial court to accept a guilty plea without an affirmative showing that the plea was voluntary and intelligent. A guilty plea was said to waive three Federal Constitutional rights [As shown above]: The right to a jury trial, the right to confront one's accusers, and the privilege against compulsory self-incrimination. Waiver of these three rights by a guilty plea cannot be presumed from a silent record [As here, with Petitioner's present situation]. See, (Affidavit of Mr. Wilkerson). The record should also reflect that the First Circuit in **Domenica** at **supra**, further supports the **Boykin's** standard.

The Honorable Judge Dolan upon denying Petitioner's Motion For New Trial Pursuant to Mass. R. Crim. P. 30(b), lacking knowledge of Mr. Wilkerson's personal (Juvenile) history erroneously held as follows:

> "In the very date (5/10/93) he received this sentence, defendant apparently pleaded to another charge at the Dorchester Jury Session # 9207JC0393. He had appealed a prior case to the Jury Session and defaulted there. He also defaulted on this case. 'WHILE THE DEFENDANT PROBABLY DID NOT GET A FULL COLLOQUY ON THIS CASE,' he was advised of his right to appeal to a jury trial. He had exercised that right in the past [Where as here, Mr. Wilkerson was nothing but a juvenile -- running/hiding from the Department of Social Services (DSS)] and disposed of a case in the Jury session. On 5/10/93 he took an 18 months committed sentence in the Jury Session and a suspended sentence on this case."

See, (Judge Dolan's Denial Order, dated 8/3/00 at Exhibit - B). See also, (Affidavit of Mr. Charles Wilkerson in support of same).

Thereafter, it should be further noted that, the Commonwealth of Massachusetts Appeals Court later compounded the error committed by Judge Dolan i.e., by denying Mr. Wilkerson's appeal by holding the following:

-5-

"In addition, the judge who denied the defendant's
motion to withdraw his plea was the same judge who
took the plea and implemented the plea bargain.  We
grant substantial deference to a decision denying
a Rule 30(b) motion of this type when the judge pass-
ing on the motion is the same judge who heard the
plea.  **Commonwealth v. Amirault**, 424 Mass. 618, 646
**(1997).**  The judge had the defendant's  memorandum
of law and heard argument on the defendant's motion
to withdraw his admissions before denying the motion.
The judge appeared to have relied on the fact that
the defendant was not inexperienced when it came to
District Court practice in 1993.  See, **Commonwealth
v. Russell**, 37 Mass.App.Ct. 152, 157 (1994), cert.
denied, 513 U.S. 1094 (1995).  The judge noted that
on the same date as the plea in question, the defen-
dant pleaded to another charge in a District Court
Jury Session.  He had also appealed a prior case to
the Jury Session, and defaulted there.  As such, the
judge noted, the defendant had exercised his Jury
Trial right in the past and disposed of a case in the
Jury Session.  This suggests that the defendant had
an awareness of the mechanics of a trial, his right
to confront witnesses and the like, and his right to
have his guilt or innocence ultimately determined
by a jury.  See, **Ibid**.  This circumstance supports
the conclusion that the defendant understood the conse-
quences of his admissions on May 10, 1993."

**Id**. at 3 - 4 (Commonwealth of Massachusetts Appeals Court Denial Order

dated, May 1st, 2002).  See also, (Exhibit - C).

Now, Mr. Wilkerson, pro-se, further submits the instant motion

requesting leave to amend, to refer this Honorable Court to numerous

significant/extraordinary areas of Petitioner's First and Second

Federal Sentencing Transcripts and Federal Sentencing Memorandum by

the Honorable Nancy Gertner -- highlighting where Petitioner's child-

hood run-ins with the law, explicitly invalidates Judge Dolan's Denial

Order (And the Appeals Court's Order of Affirmance...where neither

Court took time out to discover the facts below by delving behind the

scenes as Judge Gertner executed at length , and the proceedings in

pertinent parts at length went as follows:

THE COURT:  Okay.  Number two, on the face of what you've

1  presented, Mr. Palmer, there's not a basis for downward departure based

2  on family obligations, except as I began to look underneath the surface

3  of this case.  I can't figure out how Mr. Wilkerson lived from age 14

4  on.  His mother was not in the picture.  Who raised him?

5  　　　　MR. PALMER:  Well, there's a suggestion in the probation re-

6  port, which I think is confirmed by the defendant, that he basically

7  was on his own on the street.  There were friends, parents of friends,

8  that type of thing, who took him in.

9  　　　　THE COURT:  Do you have -- or are there DYS records as to --

10 I mean, yes, everyone has come from broken homes, but there usually was

11 some parent around.  It looks, from this, that Mr. Wilkerson was on the

12 street at 14.

13 　　　　MR. PALMER:  Well, that's why I say it's extraordinary.

14 　　　　THE COURT:  Well, but I need more data to back it up.  It's

15 not just his say-so.  I need more data.  I think there would be DSS

16 records that can -- if he was ever in Department of Social Services

17 custody, there would be DSS services.  If he was ever in DYS custody,

18 someone would have done an evaluation of him.  Maybe there are school

19 records.  When did he stop going to school?

20 　　　　MR. PALMER:  I think he dropped out in the ninth grade, your

21 Honor, so it was about that time, and he was 13 or 14.

22 　　　　THE COURT:  And he stayed with friends.  Are there parents of

23 friends who can tell us something about what his life was like?  The

24 case law on extraordinary family obligations is very narrow.  Very, very

25 narrow.

26 　　　　Now, this -- a kid on the street at 14 is something that is

27 certainly far worse than others that I've seen.  Not just broken homes.

28 Not just from family to family.  But nothing.  But I need confirmation

1  that it is nothing.  I need documentation that that's so.

2       I don't promise that when I get that documentation I will
3  still think it rises to this level, but, certainly, that's a much --
4  that is a different story.  People that come from broken homes, the
5  fathers have been in and out of trouble, the mothers have been in and
6  out of trouble.  But I don't think that any one of the people that I've
7  sentenced, at least, has come from nothing.  And this looks like nothing

8       And surely, someone at school, Department of Social Services,
9  Department of Youth Services, a neighbor, a teacher, somebody, would
10 have seen what was going on.  Because it almost looks like, if he was
11 really on the street, jail was almost the safest place to be.

12       MR. PALMER:  Well, he was committed to DYS at the age of 15.

13       THE COURT:  For how long?

14       MR. PALMER:  I think -- I think the report indicates he was
15 in the custody of DYS for 30 months.

16       THE COURT:  Thirty months.  Thirty months.  So --

17       MR. PALMER:  Now, whether that was within a, you know secure
18 situation, I'm not sure, because DYS has the ability to place people as
19 well.

20       THE COURT:  I would like to see that.  That -- I -- if there
21 really is a total absence of parental or any other kind of guidance, I
22 want to hear about that.

23 Id. at 7 - 9.  See, (Exhibit - E).

24       THE COURT:  I agree with you.  I agree with you completely.
25 I mean, this has been an evolving story.  I agree with you completely.

26       MR. PALMER:  I do, too, your Honor.

27       THE COURT:  I mean, Mr. Palmer, though, raised the question
28 of the efficacy of the 1993 conviction.  I think he has a very substan-

1  tial argument, looking at Judge Dolan's endorsement on that.

2  **Id.** at 13.  See, (Exhibit - E).

3  **MR. PALMER:**  So, I mean, my point, as I say, you've written

4  extensively on it with respect to the codefendants.  That's the issue.

5  I would suggest that -- I mean, it ties in to the family issue that,

6  according to the reports, this is a young man who, at the age of 15,

7  was basically thrust in the role of overseeing or managing or trying

8  to, as best he could under difficult circumstances, and there's some

9  indication in the reports that he was trying to make a living and

10  support his younger brother and mother in a dysfunctional environment.

11  And it wound up with involving him in what I would call low-level crime

12  in Roxbury or Dorchester.

13  There's no indication of violence.  And I think, going back

14  to the DSS records, it's striking to me that of all the reports in the

15  DSS, there's talk about his brother, there's talk about his sister,

16  there's not that much talk about Charles acting out in inappropriate

17  ways except for the fact that he was possibly involved in selling drugs.

18  That's basically the complaint against him.

19  And so, you have him committing these crimes in the context

20  of this family -- this dysfunctional family.

21  **Id.** at 14 - 15.  See, (Exhibit - F).

22  **THE COURT:**  Okay.  Have you read the presentence report, sir?

23  **THE DEFENDANT:**  Yes.

24  **THE COURT:**  Are there any other corrections that you want to

25  tell me about, other than what your lawyer's told you about?

26  **THE DEFENDANT:**  The ages are wrong.

27  **THE COURT:**  The age of what?

28  **THE DEFENDANT:**  The ages, just how they break down the

crimes and ages.

      **THE COURT:** What do you mean, you're older or younger at the various --

      **THE DEFENDANT:** Younger.

      **THE COURT:** Younger.

Id. at 22. See, (Exhibit - F).

    Mr. Wilkerson's story is tragic and compelling.  He was abandoned by his parents at age 14, and from that point on, except for periods in the custody of the Department of Youth Services, he and his three siblings were homeless.  He became the family's provider.  He dealt drugs to obtain money for all their needs -- food, clothes, school supplies -- and when they found a place to live, rent money.  While I have sentenced individuals with dysfunctional families before, I have never encountered a young man who had to raise himself.

    Between the ages of 17 and 22, Mr. Wilkerson had numerous encounters with the police -- a pattern of convictions in the district courts (for the most part) involving drugs, motor vehicle violations, and possession of burglarious tools.  None involved violence.

Id. at 1 - 2.  See, (Exhibit - G).

    "The tragic bottom line is that for a non-violent street dealer for whom dealing drugs, although wrong, may well have meant survival, Mr. Wilkerson will be obliged to serve ten years in jail."

Id. at 4.  See, (Exhibit - G).

    A.  **Personal Background**

    ·Mr. Wilkerson is a 26 year old man, who was abandoned by his parents at age 14 (e.g., These facts derive from the Presentence Report and were uncontested.  In addition, the Court has reviewed the voluminous records from the Department of Social Services.).  He was born on

July 28, 1975, the second of four children of Austin Johnson and Robin Wilkerson.  During the first ten years of his life, he witnessed the daily abuse of his mother at the hands of what his probation officer described as her "drug crazed" companion (e.g., Even before the total disintegration of the family when Mr. Wilkerson was 14, there were re- ports of serious problems:  a neglect petition from 1987 (when Mr. Wilkerson was 11) indicating that his mother admitted to wrapping an extension cord around Mr. Wilkerson's neck, trying to strangle him.  On other occasions she left the four children alone when the oldest was only 11.).

At 14, his father left home.  His mother retreated to her bedroom, effectively abandoning the children because of her crack cocaine addic- tion.  Then, according to Department of Social Services records, the house was raided by police as a "crack house."  The family became home- less, finding temporary shelter at the homes of relatives and friends, when they could, or motels, or the streets.  Records reflect that Mr. Wilkerson's mother attempted suicide numerous times, that numerous neglect petitions were filed for the children by the authorities that encountered them at school, or on the street.  They speak of a family "in crisis," of a mother "overwhelmed," of children raising themselves.

Before he was 17 Mr. Wilkerson ran afoul of the law and was in and out of the custody of the Department of Youth Services.  He never gradu- ated from high school;  indeed, he barely attended school at all be- cause of the disarray at  home.

Older youths from the Castlegate gang recruited Mr. Wilkerson to sell drugs, knowing that there was no parental oversight.  With the pro- ceeds from the sale of drugs, Mr. Wilkerson paid for his siblings' needs -- school supplies, food, clothes -- and tried to raise money for rent

1  (e.g., This theme of Mr. Wilkerson's functioning as the sole support of

2  his mother and three siblings, is repeated throughout the records of

3  the Department of Social Services.)  As probation notes, "In Ms.

4  Wilkerson's mind, her son was a hero."

5  **Id.** at 5 - 6.  See, (Exhibit - G).

6  In the case at bar, Petitioner submits the fact that Judge Dolan's

7  failure to hold a plea colloquy and thereafter an "EVIDENTIARY HEARING"

8  to delve behind the scenes [As the Honorable Nancy Gertner, D.J. execu-

9  ted above at length, again, in Petitioner's Federal Sentencing proceed-

10  ings -- discovering the true fact that Mr. Wilkerson was a juvenile--],

11  to allow the record to be fully developed, deprived Petitioner from

12  acquiring an equitable, fair and impartial plea hearing (i.e., free

13  from coercion, pressure and duress, etc.), and explicitly proven where

14  Petitioner asserted in his affidavit in support of his motion for new

15  trial in pertinent parts that:

16  "5.  I had a brief conversation with Mr. Tomasetti in
       the lockup in which he told me that he could not try
17     the case, but that he could get me a suspended sen-
       tence.  He did not discuss the facts of the case, re-
18     view any defenses to the case, or discuss the search
       warrant that had resulted in the seizure of evidence;"
19

20  "7.  I was asked if I understood the charges to which
       I was pleading guilty.  I was not asked or told about
21     the right to jury that I was waiving, i.e.,  that the
       jury is made up of members of the community, that I
22     could participate in their selection, that their ver-
       dict must be unanimous, that the jury decides the facts,
23     and the judge rules on the law and imposes sentence if
       found guilty;"
24

25  "9.  My admission to sufficient facts was not volun-
       tary because I thought that if I did not plead guilty
26     and claimed my right to a trial or jury trial, I would
       have to remain in jail;"
27

28  See, (Affidavit of Mr. Charles Wilkerson -- Dated 2/10/00);

In **Marquis v. United States**, 698 F.2d 13 (1983), which stands in complete contrast to Mr. Wilkerson's position where the court held that, "At the time of the plea, the District Judge questioned the petitioner at length and gave him every opportunity to reconsider and withdraw his guilty plea. He did not. Petitioner was a sophisticated and success-ful businessman. He understood what he was doing and pled guilty volun-tarily. Being an insurance salesman, petitioner possessed the neces-sary forcefulness and articulation to tell the judge he was being forced against his will to plead guilty if that was indeed the case." Id. at 16. Unlike Mr. Wilkerson [who was a juvenile, running from DSS and DYS, a junior high school dropout, very inexperienced to the intri-cate science of the law, placed under duress by defense counsel with trickery (alleging that he [Mr. Tomasetti, Esq.] could not try Peti-tioner's case), and being raised/guided by older Castlegate gang mem-bers with knowledge of Mr. Wilkerson's status...etc.] See, (Affidavit of Mr. Wilkerson). See also, (Exhibits - D - G).

In the instant matter at hand, where there is no record of Peti-tioner's plea colloquy, Mr. Wilkerson asserts that the Commonwealth of Massachusetts Appeals Court has acknowledged that if that record "is unavailable, it may be reconstructed through testimony or other suita-ble proof of what happened in court when the guilty plea was taken." **Commonwealth v. Quinones**, 414 Mass. 423, 432 (1993) (citations omitted). See, **Commonwealth v. Rzepphiewski**, 431 Mass. 48, 53-54 (2000). View-ing the above mentioned, it should be noted that an "EVIDENTIARY HEARING" is inevitable/imminent.

In **McCarthy v. United States**, 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court set out two purposes to be served by Rule 11: First, to assist the District Court in making the

-13-

constitutionally mandated determination that the defendant's guilty plea is voluntary, and second, to provide a complete record at the time the plea is entered of factors relevant to the voluntariness determination.

Furthermore, failure to comply with Rule 11 entitles a Federal defendant [As here, Mr. Wilkerson] to have his guilty plea set aside and his case remanded for another hearing at which he may plead anew. **United States v. Segal**, 549 F.2d 1293, 1296 (1977). See, **McCarthy**, 394 U.S. at 468-72. See also, Fed.R.Crim.P. 11 Advisory Committee Notes to 1974 Amendments ("The method by which the defendant's under-standing of the nature of the charge is determined may vary from case to case, depending on the complexity of the circumstances and the particular defendant ...."). Although, "[c]harges of a complex nature, including esoteric terms unfamiliar to the laymind, may require greater explication by the 'BENCH,'" **Mack v. United States**, 635 F.2d 1237, 1245 (1st Cir. 1991); **United States v. Corporan-Cuevas**, 244 F.3d 199, 203 (1st Cir. 2001).

In **Sassoon v. United States**, 561 F.2d 1154, 1157 (1977), the court held that, "A defendant is entitled to plead anew if a United States District Court accepts his guilty plea without fully adhering to the procedure provided for in Rule 11." See, **McCarthy at 463-64**, 89 S.Ct. at 1169. Plus, "Rule 11 claims 'MUST' be resolved 'SOLELY' on the basis of the arraignment and sentencing transcripts [which is unavailable in Mr. Wilkerson's case]. **Id**. at 1157. See, **United States v. Coronado**, 554 F.2d 166 (5th Cir. 1977). Although **Boykin** involved a state prisoner [As here with Mr. Wilkerson], the same principles guided the Supreme Court in this decision as in cases construing Rule 11 for use in Federal Courts. See, **Boykin at 243**.

-14-

1    Moreover, the judge should also "make sure that the defendant has
2 conferred with his counsel about the waiver, and that he has not been
3 pressured or cajoled and is not intoxicated or otherwise rendered in-
4 applicable of rational judgment." **Ciummei v. Commonwealth**, 378 Mass.
5 504, 510 (1979).  In brief, "a defendant... must simply have indicated
6 a comprehension of the nature of the choice."  **Id.**  See, (Affidavit
7 of Mr. Wilkerson, in support of the pressure/duress Petitioner was
8 placed under deceitfully by Mr. Tomasetti, Esq.).

9    Petitioner further submits that the record must demonstrate that
10 the defendant was pleading guilty or admitting to sufficient facts
11 voluntarily and had not been threatened or unduly pressured.  A "real
12 probe of the defendant's mind" is necessary in order that the colloquy
13 not "become a litany,' but [rather] attempt a live evaluation of whe-
14 ther the plea has been sufficiently mediated by the defendant with
15 guidance of counsel, and whether it is not being extracted from the
16 defendant under undue pressure."  **Commonwealth v. Foster**, 369 Mass. 100,
17 107 (1985).  Representations from counsel may not be substituted for
18 questions from the court and responses from the defendant on the record.
19 **Commonwealth v. Pavao**, 423 Mass. 798, 802 (1996) ("Critical evidence for
20 determining whether the [Jury Trial] waiver was made [must] come directly
21 from the defendant in the colloquy.").

22    In addition, "while it is true that <u>Sassoon</u> may have known and under-
23 stood the charges against him, both the Supreme Court and this Court
24 [Likewise, the First Circuit] have held that the District Court must not
25 proceed upon an assumption that the defendant has been adequately in-
26 formed.  The <u>McCarthy</u> Court stated that the District Court must not act
27 upon any assumptions not based on recorded responses to his inquiries."
28 <u>Id</u>. at 1158.  Rule 11 makes clear that the judge "<u>MUST</u>" "develop, on the

1  record, the factual basis for the plea, as, for example, by having the
2  accused describe the conduct that gave rise to the charge." **Santobello**
3  **v. New York**, 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971)
4  (dictum) (emphasis in original).  Had the above mentioned legal princi-
5  ples been adhered to by Judge Dolan, it would have been known of what
6  Mr. Wilkerson was running from and the critical factor of his juvenile
7  upbringing.

8       Nonetheless, Petitioner asserts that, in examining the state record,
9  the District Court must also determine whether the state tribunal pro-
10  vided a "FULL AND FAIR HEARING", **Townsend v. Sain**, 372 U.S. 293, 312,
11  83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1962), on the voluntariness of the
12  plea, e.g., **Clayton** at 119.  Consistent with **Townsend**, courts have
13  deemed an Evidentiary Hearing before the District Court a necessity
14  only if the state record does not meet that standard.  **Sena v. Romero**,
15  617 F.2d 579, 580-81 (10th Cir. 1980).  Once this Honorable Court con-
16  venes/orders a Federal Evidentiary Hearing, Petitioner would be able to
17  present his prima facie case (fully developing the facts of Mr. Wilker-
18  son's claims), and all the constitutional violations..., the burden
19  shifts to the state [As here, the State of Massachusetts] to show the
20  voluntariness of the plea.  **Sena** at 581.  **United States v. Price Paul**,
21  540 F.2d 417, 423-24 (9th Cir. 1976);  **Howard v. Wolff**, 511 F.Supp. 189,
22  193 (D.N. 1981).

23       The reliance of other courts on the "Full and Fair Hearing" standard
24  of **Townsend** demonstrates that they too recognize the factual nature of
25  the **Boykin** inquiry.  An evidentiary hearing is necessary when such a
26  factual claim remains unresolved [As here, with Mr. Wilkerson, pro-se].
27  See, 28 U.S.C. § 2254(d) (1976).  In **United States Ex Rel. Grundset v.**
28  **Franzen**, 675 F.2d 870 (1982) (quoting **Clayton**) [As in Mr. Wilkerson's

1 case in question], "no transcript of the guilty plea proceeding was
2 available. An evidentiary hearing was held before the same judge who
3 had presided at the entry of **Clayton's** guilty plea." **Id** at 879. "The
4 magistrate to whom the case was assigned recommended that a writ of
5 habeas corpus be granted and that the District Court [As here, with the
6 District Court of Massachusetts] hold an evidentiary hearing to assess
7 the credibility of those who testified at the state hearing..." **Id**. at
8 879.

9     Mr. Wilkerson submits that, the inquiry required of a District Judge
10 on a petition for habeas when the record of the guilty plea proceeding
11 is inadequate has been discussed by several courts of appeals. First,
12 the district Judge must examine the entire record of state proceedings
13 to determine (1) whether the petitioner raised a prima facie case of a
14 constitutional violation, e.g., **Clayton** at 120; **Todd v. Lockhart**, 490
15 F.2d 626, 628-29 (8th Cir. 1974) (per curiam), and if so, (2) whether
16 the **Boykin** defect was cured in the course of post-conviction proceedings
17 by a demonstration that the plea was made voluntarily and with knowledge
18 of its consequences, e.g., **Gardner v. Pogue**, 568 F.2d 648 (9th Cir. 1978)
19 The burden in such a state post-conviction hearing must be allocated to
20 the state if it is to cure the **Boykin** defect. **Griffith v. Wyrick**, 527
21 F.2d 109, 112, n. 4 (8th Cir. 1975).

22     In **Mack v. United States**, 635 F.2d 20 (1st Cir. 1980), the First
23 Circuit explicitly held that, "Here, we follow the holding of **McCarthy**
24 that 'prejudice inheres in a failure to comply with Rule 11.'" **McCarthy**
25 **v. United States**, 394 U.S. at 471, 89 S.Ct. at 1173. A guilty plea "can-
26 not be truly voluntary unless the defendant possesses an understanding
27 of the law in relation to the facts." **Id**. at 466 and 1170. For the
28 record sakes, the First Circuit further held that, "A defendant whose

1 plea has been accepted in violation of Rule 11 is given the opportunity
2 to plead anew." **Id**. at 472 and 1173; **United States v. Cruz-Rivera**,
3 357 F.3d 10, 13 (1st Cir. 2004) (Rule 11 requires, in relevant part,
4 only that the District Court ensure that the defendant understands "the
5 nature of each charge" to which he is pleading guilty. Fed.R.Crim.P. 11
6 (b)(1)(G)).

7    Now, that the person convicted is represented by counsel is irrele-
8 vant to a **Boykin** violation. The defendants in **Boykin** and **Price Paul**
9 were represented by counsel in the state court proceedings. **Boykin**,
10 395 U.S. at 239, 89 S.Ct. at 1710; **Price Paul**, 540 F.2d at 419. The
11 issue in those cases [As in Mr. Wilkerson's case in question] was suffi-
12 ciency of the record to show a voluntary and intelligent waiver by
13 guilty plea of the privilege against self-incrimination, the right to
14 trial by jury, and the right to confront one's accusers. **Boykin**, at
15 243 and 1712; **Price Paul**, at 420. See, (Affidavit of Mr. Wilkerson).

16    In **Pettiford at Infra**, Petitioner refers this Honorable Court where
17 the authority/legal principle (precedence) of the First Circuit has
18 already been established years ago and it is "CRYSTAL CLEAR" holding
19 that, "With no memory there was no affirmative waiver. Exceptional
20 circumstances may excuse a delayed making of a claim, **Knight v. United**
21 **States**, 37 F.3d 769, 773 (1st Cir. 1994), and 'IGNORANCE MAY BE A FAC-
22 TOR.'" See, (Affidavit of Mr. Wilkerson in further support of ignorance
23 being a factor to his exceptional circumstances -- from Petitioner's
24 juvenile status, harsh upbringing/childhood, etc., already found and
25 established by the Honorable Nancy Gertner, D.J.). See also, (Exhibits
26 D - G).

27    The Tenth Circuit in **Sena v. Romero**, 617 F.2d 579, 580 (10th Cir.
28 1980), held that, "Placing burden of proof upon state prisoner to es-

tablish that his guilty plea in state trial court was involuntary was error in habeas corpus proceeding in that Rule in **Boykin** required an affirmative showing of voluntariness and a silent record shifted the burden to the Government to prove that the waiver was knowingly, voluntarily and intelligently made." And, it is "error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." **Boykin** at 395 U.S. at 242, 89 S.Ct. at 1711.

Therefore, in a Denial Order reprimanding the Government's ill-actions, the Honorable Gertner, D.J. in support of Petitioner's inexperience, ignorance and juvenile status, etc., held that:

> "If the Government is so concerned..., then they should also be concerned about a defendant who is 'IGNORANT' of the implications of pleading guilty to charge 'A' rather than charge 'B', who, detained for many months, unable to make bail, may plead guilty without any charge bargaining, just because he is offered time served and immediate release" [As the said situation with Mr. Wilkerson].

**Id.** at 4. See, (Exhibit - D). See also, (Affidavit of Mr. Wilkerson in support of the aforementioned holding by the Honorable Gertner, D.J.

CONCLUSION

In the instant matter at hand, Petitioner, pro-se, hereby respectfully requests for this Honorable Court to apply the First Circuit's authority in **United States v. Pettiford, 101 F.3d 199 (1st Cir. 1996)**, in Mr. Wilkerson's present situation, where the Court in pertinent parts explicitly found:

> "He was unsuccessful in obtaining useful tapes, post, and subsequently attempted to reconstruct the proceedings through the use of affidavits. Ultimately, the courts vacated eight of the nine convictions. The Boston Municipal Court Judge, finding no record that the trial judge had engaged in any colloquy with the defendant at the time of his guilty plea,

1  
2  
3  
4  
          vacated the convictions on the ground that the Commonwealth had failed to carry its burden of producing a 'contemporaneous record affirmatively [showing] that the defendant waived his rights voluntarily and knowingly,' as required under the Federal Constitution and Massachusetts law. The Dorchester District Court apparently did the same."

5  Id. at 200.

6  
7  
8  
9  
10  
11  
          "For the Boston Municipal Court cases there were no records, presumably because more than two and a half years had elapsed since the plea and they had been destroyed pursuant to permissive Rule 211A(4). In the Dorchester District Court there were tapes, but they were unintelligible. One Court demonstrably, and the other apparently, applied the Massachusetts rule that the burden is on the state to show the voluntariness of the plea, **Commonwealth v. Duquette**, 386 Mass. 834, 841, 438 N.E.2d 334 (1982), and granted the motions to vacate."

12  
13  Id. at 202.  See, (Exhibits A - G and supporting affidavit of Mr.

14  Wilkerson, pro-se.).

15     Mr. Wilkerson further asserts for the record sakes that, even

16  the Honorable Gertner, D.J. below has "OVERRULED" Judge Dolan's

17  Denial Order (for its erroneous reasons without even investigating

18  Petitioner's status that would have reflected -- Juvenile) and the

19  Massachusetts Appeals Court (at Exhibits - B & C), where the Honora-

20  ble Gertner, D.J. explicitly held that:

21  
22  
23  
24  
25  
26  
          "I need not resolve the issue. Even if **Mitchell** is the standard, this record is inadequate. To be sure, the state district court implies that the colloquy was defective, that Mr. Wilkerson "probably did not get a full colloquy." The state court judge suggests that that failure can be excused because Mr. Wilkerson knew he had a right to appeal, and had appealed in other cases. Mr. Wilkerson's actual knowledge of his rights is not enough to justify an inadequate judicial colloquy."

27  Id. at 12.  See, (Exhibit - G).

28     Moreso, Petitioner states that, even though the present case de-

1  rives from a state proceedings where no tapes/transcripts are availa-
2  ble, during Mr. Wilkerson's Federal Sentencing proceedings -- the
3  Honorable Gertner, (A Federal District Judge in Massachusetts),
4  following Federal law and the United States Constitution as pin-
5  pointed above, has already made it clear that the instant conviction
6  should be invalidated and vacated.  The Honorable Gertner, D.J. consi-
7  dering Petitioner's sentence via, the Sentencing Guidelines, made it
8  known that she adheres to her own District Court's precedences [Re-
9  questing that this Honorable Richard G. Stern, D.J. does likewise,
10 and follows suit with Judge Gertner's ruling -- not creating a con-
11 flict...], by emphasizing that:

12      This analysis is consistent with the analyses of other judges
13 of this Court.  **Id.** at 17.  See, (Exhibit - G).

14      In closing, Mr. Wilkerson, pro-se, explicitly asserts that, the
15 requested Habeas Corpus should also be granted, in light of the Supre-
16 me Court's holding in **Williams v. Taylor**, 529 U.S. 420, 146 L.Ed.2d
17 435, 120 S.Ct. 1479 (2000), where the Justices opinion/ruling
18 emphasized that, "A prisoner who developed his claim in State Court
19 [as here, with Mr. Wilkerson] and can prove the State Court's decision
20 was 'contrary to, or involved an unreasonable application of, clearly
21 established federal law, as determined by the Supreme Court of the
22 United States,' [in the same manner Petitioner has overwhelmingly
23 done] is not barred from obtaining relief by Section 2254(d)(1)" [as
24 also reflected above as a whole by the various authorities cited
25 herein in conjunction with Judge Gertner's holding at supra, at 20.
26 Id. at 450.

27      **WHEREFORE**, Petitioner, Charles Wilkerson, pro-se, respectfully
28 requests that this Honorable Court thoroughly entertains the instant

1  motion to amend -- the aforementioned facts, authorities, exhibits,
2  arguments (legal/factual) and accompanying affidavit etc., and
3  humbly prays that all the reliefs requested are thereby GRANTED
4  as a whole and/or in part; GRANT Petitioner's leave to file the
5  instant Rule 15(a),F.R.Civ.P. Motion to Amend; GRANT Petitioner
6  the Appointment of Counsel; GRANT Mr. Wilkerson a "FULL AND FAIR
7  EVIDENTIARY HEARING" for Petitioner to fully develop all the facts
8  of his claim(s)/Plead Anew; GRANT Petitioner the VACATUR of the
9  present State conviction in question; GRANT the instant Motion to
10 Amend with Petitioner's Writ of Habeas Corpus pursuant to 28 U.S.C
11 Section 2254, in light of the following legal authorities: Boykin,
12 McCarthy, Pettiford, Townsend and Mack at supra, etc.; and/or
13 GRANT Mr. Wilkerson whatever other relief this Honorable Court
14 deems just, proper and/or necessary as the law demands ... due to
15 "EXCEPTIONAL CIRCUMSTANCES" way beyond Petitioner's control --
16 where a denial of the instant reliefs requested will raise some
17 serious Constitutional questions and cause Mr. Wilkerson, pro-se,
18 to suffer a grave miscarriage of justice of a prisoner who is
19 "ACTUALLY 'FACTUALLY' INNOCENT."
20 SIGNED ON THIS _____ DAY OF _____, 2004.

Respectfully submitted,


_____
Charles Wilkerson, pro-se.
Reg. No. 22166-038 (D-304)
U.S.P. Lewisburg
P.O. Box - 1000
Lewisburg, PA. 17837

# CERTIFICATE OF SERVICE

I, __Charles Wilkerson, pro-se,__ , hereby certify that I have served a true and correct copy of the foregoing:

MOTION REQUESTING LEAVE TO FILE PETITION TO AMEND PURSUANT TO RULE 15(a), F.R.Civ.P., DUE OT EXCEPTIONAL CIRCUMSTANCES -- TO PREVENT A SERIOUS MISCARRIAGE OF JUSTICE, WITH ATTACHED EXHIBITS AND ACCOMPANYING AFFIDAVIT

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, Houston vs. Lack, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

          Massachusetts Attorney General
          One Bulfinch Way
          Boston, Massachusetts 02114

and deposited same in the United States Postal Mail at the United States Penitentiary,

Signed on this _____ day of _____; 2004.

Respectfully Submitted,

          _____
          Charles Wilkerson, pro-se.

          REG. NO._22166-038____
          U.S.P. Lewisburg
          P.O. Box - 1000
          Lewisburg, PA. 17837

## EXHIBITS

A - Order by the Honorable Richard G. Stern, D.J., dated August 23, 2004, instructing Petitioner to pay his filing fee of $5.00 within 42 days...;

B- Commonwealth of Massachusetts Denial Order, dated August 3, 2000, by Judge Dolan;

C- Commonwealth of Massachusetts Appeals Court Denial Order, dated May 1, 2002;

D- Memorandum Re:  Issuance of an Order Relative to Sentencing - Related Motions filed in State Court, Ruled on January 25, 2000 by the Honorable Nancy Gertner, D.J.;

E- Mr. Wilkerson's First Sentencing Transcripts, dated November 14, 2001, by the Honorable Nancy Gertner, (U.S.D.J.);

F- Mr. Wilkerson's Second Sentencing Transcript, dated December 17, 2001, by the Honorable Gertner (U.S.D.J.);  and

G- Mr. Wilkerson's Sentencing Memorandum by the Honorable Nancy Gertner, (U.S.D.J.), dated January 10, 2002.